### MILBURN WAGON COMPANY v. J. P. KENNEDY.

#### No. 2859.

1. **Practice—Right to Open and Close Argument.**—Plaintiff sued upon certain promissory notes and caused an attachment to be levied upon property claimed by defendant as homestead. On the trial the defendant "admitted the plaintiff's cause of action in full," and only claimed that the lot seized was exempt from forced sale. *Held*, that the court properly allowed the defendant to open and close.

2. **Homestead—Testimony to Intention.**—It was not error to allow a party claiming land as part of his homestead to testify to his intent in resuming possession of land as homestead which had been leased.

3. **Resuming Possession as Homestead.**—A married man with family owned two adjoining lots under one enclosure. He leased one of the lots, upon which was a house. Becoming involved he arranged with his tenant and obtained the possession of the leased lot, took down a partition fence, and appropriated it to home uses. *Held*, that he had the legal right to do so, even if with intent to withdraw it from liability for his debts, if done before a lien is fixed upon it by his creditors.

4. **Fact Case.**—See facts held sufficient to support a verdict sustaining the homestead exemption of a lot which had been leased out and possession resumed.

APPEAL from Ellis. Tried below before Hon. Anson Rainey.

The opinion states the case.

*Powell & Harding*, for appellant. — 1. The court erred in allowing defendant to open and conclude when his admission did not include all of plaintiff's allegations as to fraud. Rev. Stats., art. 1299; Rules Dist. Ct., 31; 67 Texas, 93.

2. The court erred in permitting J. P. Kennedy, defendant, to testify as to his intention to use the property in question as a part of his homestead. Miller & English v. Jannett & Franke, 63 Texas, 86.

3. The court erred in refusing to give plaintiff's first special charge to the jury, to the effect that defendant could not, by a mere pretext,

make the property a part of his homestead if he had abandoned it and had another adequate home.

4. The homestead claim of appellee was only a sham or pretext to shield the property from his creditors, and the acts and uses being in bad faith, appellant's attachment lien can not be defeated. McDonald v. Campbell, 57 Texas, 615; Hargadine et al. v. Whitfield, 71 Texas, 490; Wynne v. Hudson, 66 Texas, 7; Tillman v. Brown, 64 Texas, 184; Gassoway v. White, 70 Texas, 478; Gage v. Neblett, 57 Texas, 376; Medlenka v. Downing, 59 Texas, 39; Stringer v. Swinson, 63 Texas, 13; Peregoy v. Kottwitz, 54 Texas, 499.

*Groce & Templeton,* for appellee.—1. There is no sufficient proof of an abandonment It will be conceded that at one time the property was part of appellee's homestead. Newton v. Calhoun, 68 Texas, 451.

2. If indeed the abandonment of the homestead rights was ever complete, appellee before the levy of attachment had reappropriated the property for homestead purposes, wherefore it was not subject to the levy.

3. Fraud can not affect the question of resident homestead. It is a question of actual occupancy, and the court in its charge instructed the jury that if the possession was a sham and pretext they would find for appellant. This charge is all appellant could ask.

GAINES, Associate Justice.—The appellant corporation brought this suit against appellee upon certain promissory notes, and sued out a writ of attachment and caused it to be levied upon a certain lot in the city of Waxahachie.

The defendant in his answer claimed that the lot levied upon was a part of his homestead, and contested the right of the plaintiff to subject it to the payment of its debt.

When the parties announced ready for trial the defendant admitted "the plaintiff's cause of action in full," and only denied that the lot in controversy was subject to forced sale. Upon the issue so presented the court allowed the defendant to open and conclude. The plaintiff objected to this, and reserved an exception to the court's ruling. In addition to the allegations in its petition setting forth its cause of action, plaintiff alleged that the defendant was about to transfer his property with intent to defraud his creditors; and it is now contended that in order to acquire the right conceded him by the court the defendant should also have admitted this last allegation. But in our practice the defendant in a suit in which an attachment has issued can not controvert the grounds upon which the writ is sued out for the purpose of defeating it; and hence, whether the alleged ground for attachment existed or

not, was not an issue in the case.   We conclude therefore that the court did not err in its ruling.

The defendant testified in his own behalf and was the only witness. examined.   His testimony shows that he was the head of a family, which consisted of a wife and children, and that in 1862 he bought lot 1 in block 6, in Waxahachie, and about one month afterwards purchased the lot in controversy, which is lot 4 in the same block and adjoins lot 1.. He built a residence on the latter lot, and has ever since resided upon it with his family.   A stable was built upon that lot, which extended over upon the lot in controversy.   Both were embraced in a common enclosure, and for a long time lot 4 was used as a family garden.   Some six or seven years before the trial the defendant built a house upon this lot and constructed a partition fence between the two.   This house with the lot was. leased to tenants as a place of residence, and was so leased and occupied by a tenant up to the day before the attachment was levied.   Having failed in business, defendant induced his tenant to surrender the possession, and immediately removed the partition fence and resumed the occupancy and control.   He testified that he did this under the advice of counsel, "for the purpose of holding it as a part of his homestead and to keep his creditors from levying upon it."   He also testified in another connection, "I at once took possession of it as a part of my homestead, intending to use it as a part of my homestead.   This house is about forty feet from the family residence."   Such being the evidence, the court charged the jury as follows:   "If you believe from the evidence that defendant had abandoned the lot in controversy for home use and appropriated it for other than home purposes, then you will find for plaintiff, unless you believe that at the time of the levy the defendant had reappropriated said lot for homestead purposes and was using and occupied the same with the intention of permanently using and occupying the same as a home, then in that event you will find for defendant.   If you believe from the evidence that defendant had abandoned the lot in controversy for the purpose of a home, and that at the time of the levy he was using and occupying it as a sham and pretext to shield it from his. creditors, then you will find for plaintiff."

We think this charge clearly presented the law of the case.   The value of the two lots with their improvements did not reach the constitutional limit.   That in controversy adjoined the residence lot proper and may reasonably be presumed to have added to its comfort and convenience. A debtor who is in failing circumstances, and who has no homestead, if the head of a family, may appropriate any parcel of land he may own as his homestead by making it his place of residence at any time before the levy of an attachment or execution, and before a lien is otherwise fixed upon it, although the necessary result of such appropriation is to hinder and delay his creditors.   We see no reason therefore why one who has a

homestead and other contiguous property not then used as an appurtenance to his home may not appropriate it to such purpose and make it exempt at any time before the creditor has acquired a lien upon it. If the value does not exceed the limit fixed by the Constitution, if the property itself be such as may reasonably be deemed an addition to the comfort and convenience of the family residence, and if the intention really be to appropriate it directly to the use or comfort of the family as a part of their home, his creditors can not legally complain. If, however, the appropriation be without the bona fide intention of using the property for the purposes of the family—if it be a mere pretext designed to shield it from the claims of creditors—then it is not a lawful "destination" as a part of the homestead, and the property is not exempt from forced sale. The charge having distinctly presented the issue made by the evidence, other instructions were neither necessary nor proper. We think therefore the court did not err in refusing the instructions asked by plaintiff.

It is also assigned that the court erred in failing to charge upon the burden of proof. If such an instruction was desired on part of plaintiff it should have been asked. The same may be said of other assignments predicated upon alleged deficiencies in the charge.

We can not say that the verdict of the jury is contrary to the law and the evidence. It is true that the fact that the defendant leased the lot in controversy indicates that in his opinion the pecuniary consideration received for it was sufficient to outweigh, at least for the time being, the comfort and convenience to himself and his family resulting from the use of the lot as a part of the homestead. It does not follow that he did not regard it as a desirable addition to his homestead, and that when he saw that if he continued to lease it, it was liable to be seized by his creditors, he did not decide to resume the use of it with a bona fide intention of making it an appurtenance to his residence.

We find no error in the judgment and it is affirmed.

*Affirmed.*

Delivered November 26, 1889.