### CHRISTIAN MOERLEIN AND WIFE V. SCOTTISH MORTGAGE AND INVESTMENT COMPANY, OF MEXICO, LIMITED.

#### No. 1095.

Homestead—Estoppel—Mortgage.—City lots were community property, and the homestead of Moerlein and wife in the city of Houston. They moved to and resided four years in the city of New York. The husband returning to Houston on business needing money, represented to a loan agency that the property was not homestead, and that his residence was in New York. Upon strength of these representations he effected a loan. The deed of trust to secure it was duly executed by Moerlein and his wife. In the deed of trust it was recited, that "the property was not their homestead, nor claimed to be such, their residence and homestead being in New York." The wife in signing did not read it, but understood the purpose was to raise money. In suit to foreclose the deed of trust, *Held:*

1. The representations as to their residence and disclaiming homestead rights in the property, they not occupying it, but in fact residing in another State, were competent against their claim of homestead rights.

2. The wife's signature was not necessary, it being community property, and incapable of being mortgaged if homestead.

3. The declarations by the wife as to residence and nonclaim were competent against her, although made in the mortgage.

4. It appearing that the representations that the property was not their homestead and as to their residence were believed and acted upon, and the money loaned on faith of them, the estoppel is complete against both husband and wife.

5. The wife could not avail herself, as against one acting upon them, of her ignorance of the recitals contained in the deed of trust. Her declarations acted upon, bind her, whether the deed was acknowledged or merely signed by her.

APPEAL from Travis. Tried below before Hon. JAS. W. ROBERTSON.

*F. F. Chew, Sr.,* and *Chew & Love,* for appellants.—1. In cases like this, involving homestead rights, the estoppel must be made out by proof of facts outside the deed of trust itself. It can not by its recitals bind the homestead. Mortgage Co. v. Norton, 71 Texas, 689; Armstrong v. Moore, 59 Texas, 648.

2. The husband alone, or by act of estoppel, can not pass the title to the homestead. Coker v. Roberts, 71 Texas, 603; Robertson v. Gourley, 84 Texas, 580.

3. Under the facts of this case no estoppel can arise in favor of plaintiffs against either said Moerlein or his wife. In Texas Land and Loan Company v. Blalock, 76 Texas, 89, Chief Justice Stayton says: "The Constitution forbidding the fixing on the homestead of liens other than such as are thereby expressly permitted, no estoppel can arise in favor of a lender who has attempted to secure a lien on a homestead in actual use and possession of the family, based on declarations of the husband and wife made orally or in writing contrary to the fact. To hold otherwise, would practically abrogate the Constitution."

4. There being proof by plaintiffs of the signing of the deed of trust by Mrs. Moerlein, but none as to the formal execution of same by her when defendants assumed the burden of showing that she did not execute same, she should have been permitted to do so. 2 Greenl. on Ev., secs. 295, 300; Cox v. Cock, 59 Texas, 524; Robertson v. Du Bose, 76 Texas, 6; Lee v. Crosly, 1 Ct. App. C. C., sec. 141.

*T. W. Gregory,* for appellee.—1. Where property has not been in actual use as a homestead for many years, the family living in a distant State, and the husband and wife procure a loan upon the premises on the faith of their solemn assertion that it is not claimed or used as a homestead, but that their homestead and residence is in another State, and such assertion is believed by the lender to be true, acted upon as such, and induces the loan, the borrowers are estopped from asserting that the property is protected as a homestead from sale under the deed of trust on account of an intention on their part to reoccupy it as such, the borrower not being put on notice of such intent. Mortgage Co. v. Norton, 71 Texas, 687; Kempner & Blum v. Comer, 73 Texas, 202; Jacobs, Bernheim & Co. v. Hawkins, 63 Texas, 3; Haswell v. Forbes, 27 S. W. Rep., 567; Welch v. Rice, 31 Texas, 690; Loan Co. v. Blalock, 76 Texas, 89.

2. Ignorance on the part of Mrs. Moerlein as to the character of the instrument, or fraud in its execution, could not avoid the deed of trust, unless appellee had actual or constructive notice of same. Ragland v. Wisrock, 61 Texas, 394; Davis v. Kennedy, 58 Texas, 516; Cole v. Bammel, 62 Texas, 112; Stallings v. Hullum, 79 Texas, 423; Webb v. Burney, 70 Texas, 325.

COLLARD, ASSOCIATE JUSTICE.—This is a suit by appellee against appellants, husband and wife, on a promissory note for $1500, executed by Christian Moerlein, payable to the order of J. Gordon Brown, and to foreclose a deed of trust executed by Christian and Mary M. Moerlein on certain lots in the city of Houston, Texas, to secure the payment of the note. Among other defenses set up by Mary M. Moerlein, she denied under oath the execution of the deed of trust. The defendants set up homestead in the property at the time the deed

of trust was executed. Plaintiff replied, that the place had been abandoned as a homestead at the time, and that defendants, in the deed and otherwise, disclaimed the lots as homestead, and claimed their homestead in New York city; that Brown loaned the $1500 on faith of these representations, believing them to be true, and that defendants were estopped; that defendants were at the time living in New York city, and had lived there four years before the note was made; that plaintiff purchased the note for a valuable consideration, before maturity, without notice of any vice claimed as to the deed of trust.

Verdict and judgment were for plaintiff against Christian Moerlein on the note, and against both defendants, foreclosing the alleged lien on the land. The defendants have appealed.

The facts are as follows: In 1882 Christian Moerlein bought the lots in question—8, 9, and 10, in block 3, in Richey's addition to the city of Houston—when he built a residence house thereon and inclosed all the lots. He and his codefendant were husband and wife. He used the place as a homestead until in July, 1884, when he rented it and moved his family to Shreveport, La., where he was at work building a railroad for E. L. Bremond. The railroad work was finished in November, 1885. He then went to New York with Bremond, and his wife returned to the place in Houston, and lived there about three months. In the early part of the year 1886 Mrs. Moerlein rented the house to a Mrs. Scott, and went on to join her husband in New York. He had made a business engagement with Bremond as manager of a dramatic company, traveled throughout the United States, but made his headquarters in New York city. He continued in the dramatic business until some time in 1889, when he went back to New York and took employment with Bremond, who was trying to "finance his railroad" in that city.

As before stated, Mrs. Moerlein had rented and left the place in Houston and gone to New York city, where she remained until the 17th day of June, 1890. The property in Houston was kept rented out, and the rent money used to pay the expenses of living of Moerlein and wife. Mrs. Moerlein testified, that it was never her intention to give up the homestead in Houston, her design in living in New York city being to be more convenient to her husband, who was traveling in the theatrical business.

Moerlein, with his wife and daughter, moved back, took possession of the place in Houston in November, 1890, and have continued to reside there ever since, claiming it as a homestead. While Moerlein was traveling with the theatrical company they visited Houston several times. He always kept the house in Houston in repair, and in 1887 had piers of the house raised and the house painted. During the absence of the family they had acquired no other homestead. The absence of all of them was from the spring of 1886 to the fall of 1890.

The note sued on is dated December 21, 1889, and states that it "is secured by a deed of trust granted by myself and wife, and is described

Vol. IX. Civil.—27.

in said deed." It is made payable to J. Gordon Brown, and is in terms as described in plaintiff's petition. The deed of trust is of the same date, and conveys the property in question to R. L. Brown, trustee, to secure the payment of the note. The note is indorsed, without date, by J. Gordon Brown to the plaintiff, without recourse. The deed of trust was signed by Christian Moerlein and his wife, Mary M. Moerlein; was acknowledged by Moerlein the 23rd day of December, 1889, before the county clerk of Harris County, Texas, and purports to have been acknowledged by Mary M. Moerlein in the State and county of New York, on the 28th day of December, 1889, before Samuel J. Warren, commissioner of deeds. Stipulations are appended to the deed of trust under the following clause: "These presents are made under the following covenants and agreements, as above referred to, which have induced said loan as intended by us, with reference to the property herein conveyed." Many matters are embraced in these covenants—that the title in the grantors is good and free from incumbrance; to pay the taxes; to keep the premises in repair; to keep up fire insurance on the same; to notify the trustee of any intended sale or transfer of any interest in the property, and the following: "(7) That the property herein conveyed, or any part thereof, is not our homestead, nor claimed, used, or enjoyed as such; our residence and homestead being in the city of New York, State of New York. (8) That we will, till the above debt is paid, own and maintain said homestead, or other legal and unincumbered homestead in place of it."

The loan, note, and deed of trust came about in this way: In December, 1889, Christian Moerlein was in Houston, in need of money, and inquired of different persons where he could get it. A Mr. Levy informed him that one E. L. Dennis, of the city, was agent for a money loan company, and a loan might be obtained from him. Dennis was engaged in the business of a mortgage broker and real estate agent, and negotiated loans for such clients as employed him to do so; as such he negotiated the loan for Moerlein from Brown Bros. Moerlein called at his office in Houston, and said he wanted to borrow $1500 for two years, stating that he could give the property in suit as security. Dennis inquired of him as to his family, and whether or not the property was homestead. Moerlein replied, that he and his family lived in New York city, and had lived there since 1884, had not lived on the Houston property since they left it in 1884, and had no intention of ever returning to Texas—doing much better in New York than he could in Texas. Dennis told Moerlein that he thought he could obtain the loan for him, and if he succeeded would charge him 2 per cent commission. Moerlein agreed to pay the commission out of the loan. Dennis thereupon produced a blank form of application for loan, such as is used by Brown Bros. in their business, read over the blank to Moerlein, and filled in the blanks as informed by Moerlein, who read it over and signed it. Dennis was to get an abstract of title, and let Moerlein know whether he could get the money. He got the appraisement and

abstract of title, and forwarded them with the application to Brown Bros. In a few days Brown Bros. informed Dennis that they would make the loan, and sent the note for execution by Moerlein, and the deed of trust to be executed by Moerlein and wife. Moerlein executed the papers, and sent the deed of trust to New York to be executed by his wife. Shortly after this he brought the deed of trust back to Dennis, apparently duly signed and acknowledged by Mrs. Moerlein. Dennis forwarded the notes and deed of trust to Brown Bros., of Austin, Texas, and they sent Dennis a draft for $1500. Dennis took out his commission, $30, and a few dollars of expenses, and paid the balance of the money to Moerlein, early in January, 1890. Dennis had no authority to draw on Brown Bros., and was not their agent; he acted as agent of Moerlein in negotiating the loan.

· The application to Brown Bros., after asking for the loan, offers as security the lots in suit, describing the dwelling, and stating its value at $3100; states that the property is community of Moerlein and wife, etc., and "I reside with my family in New York city, where I have resided since 1884. I resided on the property proposed to be mortgaged from A. D. 1883 to 1884 (now vacant). $1500." The application concludes with this statement: "All of the above statements are true, to the best of my knowledge, and I understand that a loan, if granted by you or your clients, will be made on the faith of them being true."

Moerlein testified, that after he received the mortgage to have his wife sign it, he read it over and discovered that there was a statement printed therein that he had a homestead in New York; that he then informed Dennis that he had no homestead in New York, but only lived there, and asked him to change that part of the mortgage, in reply to which Mr. Dennis said, "I had better let that go; that it might be some trouble in getting the money."

Dennis' testimony denies this statement, but states that, "on the contrary, he stated to me several times that he had made New York his home since 1884, and that he had no intention of returning to Texas. He stated to me that he was doing better in New York than he could do in Texas, and that he would not return to Texas for two such places."

It was in proof that Brown Bros., of Austin, Texas, a firm composed of R. L. Brown and J. Gordon Brown—to the latter of whom the note was made payable—loaned the money in good faith, relying upon and believing to be true the statements made in the application and the deed of trust disclaiming the property in Houston as a homestead, and claiming residence in New York city, and that they would not have loaned the money if they had not believed the statements to be true.

At the time the loan was negotiated the house had become vacant, and, to save his insurance, Moerlein borrowed and had a cot moved into one of the up-stairs rooms, and slept there for three or four nights,

so as to keep his insurance from lapsing. He borrowed bedding from a friend. When the family moved away, in 1884 or 1886, some sheet music—worth, Moerlein says, $500—was left, and some wall pictures were packed away under the steps.

The lots and house were not worth exceeding $5000. The lots were each 50 by 100 feet, with a fence around. The house is a two-story dwelling, with six rooms, bath room, pantry, and two halls.

Mrs. Moerlein's testimony shows, that she did not know the contents of the deed of trust, except, in a general way, that it was to raise money on the homestead; that she signed the deed in New York city; and that Mr. Ed. Bremond was with her in New York city at the time the paper was presented to her to be signed; that the money was borrowed for his benefit, and was given to him by Moerlein and wife; that she remembers to have seen the original deed of trust in the latter part of December, 1889, or early in January, 1890; that she could not state its contents, and does not remember the contents so as to state them; that Mr. Bremond brought the instrument to her in the city New York, and asked her to go with him to the commissioner's office, which she did, but did not see the paper till they reached the office; that he told her what the paper was, and requested her to sign it, which she did; that Bremond did not read the paper over to her, nor did any one else that she could remember; that Mr. Bremond and the wife of the commissioner were the only persons present; that the commissioner was not present; that Bremond paid the commissioner's fee to the officer's wife, and she filled out the certificate of acknowledgment, her husband, the commissioner, not being present, and not having taken Mrs. Moerlein's acknowledgment; that she did not see the officer at all; that the paper was not read over or explained to her, and that she did not know the contents of the same further than that it was told her by Mr. Bremond that it was to raise money; that the whole of the paper was unknown to her, except the general statement that it was to raise money on the home; that she did not know at the time that a deed of trust was not valid on the homestead, nor that under the laws of Texas she could not create a lien on the homestead for borrowed money.

*Opinion.*—We are asked to reverse the judgment of the court below because the court charged the jury, in effect, that the disclaimer of homestead in the property in Houston by Moerlein and wife in the deed of trust, and claiming homestead and residence in New York, as stated in the deed, would estop them from present claim of homestead in the property if the statement was believed by Brown Bros. be true, and that but for the same they would not have loaned the money, and they were ignorant of facts that would make the property homestead. The contention of appellants is, that the estoppel of the wife must be shown by facts outside the instrument itself.

The deed itself, if it were upon the homestead, would be void, and the acknowledgment of the wife could give it no validity as a mort-

gage upon the homestead.   Even if Mrs. Moerlein had acknowledged the instrument as a married woman before the commissioner in form, it would not have created a valid mortgage upon the homestead, because the Constitution prohibits the execution of a mortgage upon the homestead.   In this case, however, Mrs. Moerlein did nothing more than sign the instrument—she did not acknowledge it before the officer. The officer before whom her acknowledgment purports to have been taken was not present, and did not act at all.   The acknowledgment and certificate thereof were false in fact.   We can not see, however, why Mrs. Moerlein would not be bound by the statements made in the instrument to estop her.   She signed the instrument containing the statements, knowing that it was intended to effect a loan of money. Her signature and privy examination were not necessary to create the mortgage, if a mortgage could have been made on the property.   It was community property, and if the statement made in the paper that it was not homestead, and that the homestead and residence were in New York, had been true, the husband alone could have mortgaged the property without the wife's consent or concurrence.   It is not necessary that statements, to be binding on the wife as estoppel, should be in writing, signed and acknowledged by her in form as a conveyance of the homestead.   The instrument signed by Mrs. Moerlein was presented to Brown Bros. for the loan of money on the property in Houston; she appeared at the time to be in the city of New York; she and her husband both stated that the property was not their homestead, but that their homestead and residence were in New York city. Brown Bros. relied on these statements, knowing that the property would not be subject to mortgage if homestead, and, believing the statements to be true, loaned the money.   We can see no difference in the effect of the statements made in the instrument and when made outside—that is, if the facts exist that would admit such statements in any form so as to work an estoppel.   If Mrs. Moerlein had written a letter to Brown Bros. stating the same facts, it would had been no more binding than as made in the instrument itself.

There is an expression in Mortgage Company v. Norton, 71 Texas, 689, which seems to require the matter of estoppel to be proved outside the instrument itself, and that no validity can be given the instrument by the privy acknowledgment of the wife, the instrument being a mortgage upon the homestead.   In that case the property was the separate estate of the wife.   It is certainly true that the privy acknowledgment of the wife of a mortgage upon the homestead in fact could not make it a good mortgage.   But if facts exist where the statements of the husband and wife, declaring that certain property sought to be mortgaged is not their homestead, would estop them from denying the truth of the statements, we can not see why such statements can not be as effectually made in the mortgage as in separate documents. When such a mortgage is presented to the lender, it would, in fact, influence him to the same extent as if the representations were made

separately from the contract. We can not see what reason there is in saying, that because the false representations are in the instrument itself, therefore they were not made.

Mrs. Moerlein signed the statements and authorized their delivery to Brown Bros., to effect a loan of $1500. The instrument was not good as a deed, but the statements that the property was not homestead were her acts. If the property had been in actual use as a homestead at the time the money was loaned, a statement, however solemnly made, by her and her husband to the contrary could not serve to authorize the mortgage, because the Constitution expressly forbids the act.

"If property be homestead in fact and law, lenders must understand that liens can not be fixed upon it, and that declarations of husband and wife to the contrary, however made, must not be relied upon." Land and Loan Co. v. Blalock, 76 Texas, 89; Mortgage Co. v. Norton, 71 Texas, 683; Kempner v. Comer, 73 Texas, 203.

In this case, the property was not in use as a home or residence of the family. The family had been away from it, the wife in another State for several years. While this absence would not necessarily constitute abandonment, yet it would give effect to declarations of the husband and wife that it was not the homestead, upon which persons might act in good faith. A designation of another State as the home and residence in such case would be binding upon them, if believed and acted upon in good faith by other persons. Mortgage Co. v. Norton, supra; Kempner v. Comer, supra; Jacobs, Bernheim & Co. v. Hawkins, 63 Texas, 3.

The court submitted to the jury the question of homestead or not, and charged correctly upon the question of abandonment, and then submitted the question of estoppel in the charge heretofore quoted, also instructing the jury that no estoppel could arise upon the application for the loan made by Christian Moerlein, disclaiming the property as homestead, as his wife did not join therein. Upon the issues so presented the jury found for the plaintiff.

There was no issue growing out of the fact that Mrs. Moerlein did not acknowledge the instrument, and it was, therefore, not erroneous to instruct the jury to disregard her testimony upon that subject. She testified, that she signed the paper and gave it to Mr. Bremond to be used in raising the money. Her privy acknowledgment neither adds to nor detracts from the rights of the parties as submitted to the jury, and whether it was taken before an authorized officer or not is of no consequence.

The facts did not warrant the special charge asked by the defendants, to the effect, that if Christian Moerlein was in actual possession and occupancy of the property as his homestead at the time the deed of trust was executed, the verdict should be for the defendants. Moerlein slept there for a few nights on a borrowed cot and bedclothes, not as occupying his homestead, but to prevent his insurance on the place

from lapsing. His occupancy was not as of the homestead of which plaintiff was required to take notice.

The testimony was abundant and conclusive that Moerlein and his wife represented the property as not being their homestead; that Brown Bros. believed the statements, advanced the money on the faith of the same, and that without such statements they would not have loaned the money—making the estoppel complete, in our opinion. We think the judgment ought to stand, and it is affirmed.

*Affirmed.*

Delivered January 23, 1895.

### ON MOTION FOR REHEARING.

COLLARD, ASSOCIATE JUSTICE.—Appellants contend, that inasmuch as Mrs. Moerlein did not know the contents of the deed of trust disclaiming homestead in the property she would not be estopped, the rule of estoppel being, that the representation or conduct deceiving another to his injury must be intended to so mislead and deceive.

Herman lays down four propositions of estoppel in pais, and after giving the first three familiar rules as to acts, representations, and conduct, says: "There is yet another. If, in the transaction which is in dispute, one has led another into the belief of a certain state of facts by conduct of culpable negligence calculated to have that result, and such culpable negligence has been the proximate cause of leading, and has led, the other to act by mistake upon such belief, to his prejudice, the second can not be heard afterwards, as against the first, to show that the state of facts referred to did not exist." 2 Herm. Estop. and Res Adjud., sec. 759. It is also of course laid down that the neglect must result in a wrong to the other party if the true facts must control. Id., sec. 560, et seq.

If Mrs. Moerlein did not read the statements in the deed of trust, it was her fault. No one prevented her from reading them. Brown Bros. did not prevent her, and they had the same effect in deceiving them and inducing them to loan the money as if she had read and understood them. She can not now be heard to say she did not know what she was doing. She was culpably negligent in not informing herself of the contents of the instrument she was signing.

As to the other question—that her representations were in the instrument itself—the deed of trust, to become valid upon the doctrine of estoppel, did not require her signature, it being community property. Her signature gave the deed no force except to contain the matter of estoppel, and it only bound her by the representations it contained that it was not homestead. She and her husband might well and truthfully have construed their long absence from the property and residence in another State to be an abandonment of homestead rights in the property. After so stating, they should not, nor should either

of them, after having obtained a loan on such statement from persons acting in good faith, be heard to deny the truth of the facts stated.

Other matters in the motion need no further discussion than as found in the original petition. The motion for a rehearing is overruled.

*Overruled.*

Delivered March 6, 1895.