GALVESTON, HARRISBURG & SAN ANTONIO RAILWAY COMPANY v.
ORTHWEIN-FITZHUGH COTTON COMPANY.

Decided January 23, 1902.

**Shipment of Cotton—Compressing—Notice—Costs—Railroad Commission.**

The notation, "To be compressed in transit," inserted in a bill of lading of a shipment of cotton between Texas points, as required by the rules of the Texas Railroad Commission, does not evidence a contractual undertaking on the part of the carrier, but is merely a notice of the shipper's desire to have the cotton compressed in transit, given in the manner prescribed by the rules of the commission, and subject to all the conditions imposed by such rules, one of which exempts the railroad from the duty of compressing at its own cost unless there is a compress in operation at the point of shipment or at an intermediate point directly on the line. Where there is no compress on the route, the carrier is entitled to collect the prescribed rate for the transportation, and the shipper is not entitled to deduct therefrom the cost of compressing the cotton at destination.

Appeal from the County Court of Harris. Tried below before Hon. E. H. Vasmer.

*Baker, Botts, Baker & Lovett,* for appellant.

PLEASANTS, ASSOCIATE JUSTICE.—Appellant received from the appellee at Engle, Fayette County, for shipment to Houston, Texas, fifteen bales of cotton. The cotton was shipped under two bills of lading, one covering twelve and the other three bales. Each of these bills contained the notation: "To be compressed in transit." The cotton was promptly shipped to Houston, but there being at that time no compress in operation between Engle and Houston, it reached its destination in an uncompressed condition. When the cotton reached Houston appellee refused to receive it unless appellant would have it compressed at Houston or would deduct from its freight charges 42 cents per 100 pounds the cost of such compression, which at the rate of 10 cents per 100 pounds amounted to $7.50. Appellant refused to accede to this demand and the cotton remained in its possession for several weeks, during which time demurrage and storage charges accrued to the amount of $20.75, and the market value of the cotton depreciated in the amount of $84. Appellee finally received the cotton and under protest paid all the charges. It then brought suit in the justice court to recover back the demurrage and storage charges and the costs of compression, and also to recover the amount of the depreciation in the value of the cotton, the aggregate sum claimed being $112.25.

The trial in the justice court resulted in a judgment in favor of appellee for the full amount claimed, but on appeal and trial de novo in the county court appellee only recovered the costs of compression, $7.50. From this judgment the railroad company prosecutes this appeal. The only question presented for our decision is whether the appellee is entitled under the facts in the case to recover the costs of

having the cotton compressed. This question must be answered in the negative. At the time this shipment was made the freight rate on cotton from Engle to Houston as fixed by the Texas Railroad Commission was 42 cents per 100 pounds. This was the rate paid by appellee. While the rules of the Railroad Commission required the railroad, if there had been a compress at the place of shipment or at a station directly intermediate between the place of shipment and the place of destination, to have the cotton compressed if the shipper so directed, it was only under these conditions that it became the duty of the carrier to pay the charges for compression. The rules of the Railroad Commission are as follows:

"1. A shipper desiring his cotton to be delivered at destination uncompressed, shall give to the railroad company notice of such desire by inserting in his bills of lading the notation, "To go through uncompressed," or other plain words of similar import, and it shall be the duty of the railroad company accepting such shipment to make delivery at destination accordingly.

"2. A shipper desiring his cotton delivered at destination compressed shall, when no compress is in operation at shipping point, give to the railroad company notice of such desire by inserting in his bills of lading the notation, "To be compressed in transit," and it shall be the duty of the railroad company accepting the shipment to comply with such instructions, if there is an accessible compress at a station directly intermediate between shipping point and destination.

"3. Railroad companies shall assume the cost of compressing cotton, which is to be delivered at destination compressed, only on the following conditions:

"(1) Cotton shall be compressed at shipping point, when an accessible compress is in operation at such point.

"(2) When no compress is in operation at shipping point the cotton shall be compressed at a station directly intermediate between shipping point and destination, and distant seventy miles or more from such destination. Compresses being in operation at two or more stations directly intermediate between shipping point and destination, the compress nearest to shipping point shall be selected to compress such cotton.

"(3) The amount of the cost of compressing, assumed by railroad companies, shall not exceed ten (10) cents per 100 pounds, out of rates that are not less than 35 cents per 100 pounds between stations subject to the rates prescribed in table of rates, section 1 of this tariff, nor less than 35 cents per 100 pounds to Houston from points specified in exceptions, section 2 of this tariff. When the rates between such stations are less than 35 cents per 100 pounds, the railroad companies shall assume only so much of the cost of compressing as will make the aggregate of such cost and the current freight rate not to exceed 35 cents per 100 pounds."

The uncontradicted evidence shows that at the time this shipment was made there was no compress in operation at Engle or at any station on

appellant's road between Engle and Houston, and we think clear that under the rules· above quoted appellant was not required to ·have the cotton compressed. It was further shown that there had been until a few days prior to this shipment a compress in operation at Schulenberg, a station on appellant's road between Engle and Houston, and that at the time the cotton was received for shipment and the bills of lading given therefor neither the agent of appellee who delivered the cotton nor the agent of appellant who received the same and issued the bills of lading knew that said compress had ceased operation. It is therefore evident that if the notation in the bills of lading, "To be compressed in transit," could be regarded as evidencing a contract on the part of the railroad company to have the cotton compressed, such contract having been executed under a mutual mistake of fact would not be binding. The notation in the bills of lading can not be considered as evidencing any contractual undertaking on the part of appellant, but was merely a notice of the desire of the shipper to have the cotton compressed in transit, given in the manner prescribed by the rules of the Railroad Commission and necessarily subject to all of the conditions imposed by said rules.

In fixing the freight rate for the transportation of cotton by railroads within this State the Railroad Commission has not seen fit to make any distinction between compressed and uncompressed cotton, but recognizing the benefit accruing to the carrier by reason of the lessened cost of transporting compressed cotton, it has provided that, if the shipper so requests, the railroad company shall have cotton delivered to it for shipment compressed and shall pay the charges for same not to exceed a certain amount out of the prescribed freight rate, whenever there is at the time of shipment an accessible compress in operation at the place of shipment or at any station on the railroad directly intermediate between the place of shipment and the place of destination. The freight rate is fixed at what the commission considers a fair and reasonable rate for transportation of uncompressed cotton, and the carrier is only required to expend a portion of this rate in paying compress charges when by so doing it derives the corresponding benefit resulting from the lessened cost of transporting compressed cotton. In this case the appellant was compelled through no fault on its part to transport appellee's cotton from Engle to Houston in an uncompressed condition, and we think it clearly entitled to receive the compensation fixed by law for such services.

The judgment of the court below will be reversed and judgment here rendered in favor of appellant, and it is so ordered.

*Reversed and rendered.*