Bridgeport Coal Company et al. v. Wise County Coal Company.

Decided December 1, 1906.

**1.—Finding of Fact—Refusal of Charge, Harmless.**

In a suit to set aside a deed on the ground that the same was fraudulently obtained, the refusal of the court to give an instruction to enable the jury to determine whether the statements by which the deed was obtained were deceitful and fraudulent, was harmless in view of the fact that the jury found, in answer to a special issue, that the grantors voluntarily executed said deed without any misleading or deceptive statements.

**2.—Dignity of Calls in Grant.**

A call in a deed for course and distance is not necessarily controlled by an incidental or passing call for the corner of another survey.

**3.—Special Issues—Verdict.**

When a case is submitted upon special issues it is inappropriate to give a special instruction calling for a general verdict.

Appeal from the District Court of Wise County.   Tried below before Hon. A. H. Carrigan, Special Judge.

*W. H. Bullock* and *Cockrell & Gray,* for appellants.

*R. E. Carswell,* for appellee.

CONNER, Chief Justice.—We adopt the following statement of the nature and result of this suit presented by appellants and agreed to by appellee, viz.:

"The appellee, the Wise County Coal Company, plaintiff in the court below, sued the defendant, the Bridgeport Coal Company, for certain land situated near Bridgeport in Wise County, and the appellants, Robert, Richard and Isaac Floyd and Mrs. Hardesty as heirs of R. W. Floyd intervened, and the appellees, Mary R. Bonifield and M. J. Weaver, intervened also claiming the property as the heirs of Isiah Wells.

"As to a portion of the land, the true issue as between the parties was as to whether the land was included in the J. B. Floyd survey or in the W. T. Simmons survey.   The defendant, the Bridgeport Coal Company, and all the interveners claimed the land was a part of the Floyd survey.   If that portion of the land claimed by appellee was embraced in the Simmons survey and if that survey was a valid location—then as to that part of the land, the appellee had the superior title.   As to that portion of land in controversy, which was not claimed to be embraced in the Simmons survey, the appellee claimed title under both Isiah Wells and under R. W. Floyd, the ancestors respectively of Mrs.

Vol. XLIV. Civil—24.

Bonifield and Mrs. Weaver and of the Floyds and Mrs. Hardesty as above named.

"The Floyds intervening as heirs of R. W. Floyd claimed that they owned the land in controversy and that it comprised about fifty acres, and that it had been conveyed to R. W. Floyd the ancestor about 1880 or 1881 by Isiah Wells, and that the deed had never been recorded and had been long lost or destroyed and that at the time of the conveyance, said interveners were children and had no information as to the effect or contents of the conveyance; and that their father had died while they were still of tender years, and their mother had become insane and so remained up to the time of her death, and at that time the land being of nominal value and they having removed from the neighborhood had no knowledge of their ownership of the land.

"They charged that during the year 1904, C. W. Martin for the Wise County Coal Company by deceit and misrepresentation procured conveyance to him for said coal company, said Martin having fully acknowledged the fact that Wells had deeded the land to their father, R. W. Floyd, and that the deed was unrecorded and represented to interveners that he, Martin, was the true owner of the land and that the interveners had only nominal interest in it, and that the land was only of nominal value, and that there was only about eleven acres of it, and that he wanted quit-claim deeds merely for the purpose of perfecting his own title; and that he caused William Anderson, the uncle of the interveners by like representations to assist him in procuring said deeds.

"It was charged that Martin also represented to some of the interveners that the land had been in the possession of the Bridgeport Coal Company for more than 15 years and that interveners could never recover the land. Plaintiff charged the falsity of said representations, that thereby they were induced, that is, the said R. W. Floyd and T. R. Floyd, upon the payment of said $10 each, and said Isaac W. Floyd and Mrs. Hardesty, upon payment of $25 each, to convey their interest in said land to him, the said Martin.

"It was charged that said Robert, Richard and Isaac Floyd each owned 4-15 interest in the land and Mrs. Hardesty a 1-10 interest, and that Martin had no title whatever, and that there was fifty acres of the land instead of eleven; and that the land instead of being worth the nominal amounts paid to the owners was worth $20 per acre and that there had been no adverse possession of the land by the Bridgeport Coal Company that in any way affected their title.

"It was charged that the interest of Robert and Richard Floyd procured for $10 to each was worth, each interest, $250; and that the interest of Isaac Floyd procured for $25 was worth $250, and the interest of Mrs. Hardesty procured for $25 was worth $100.

"The Wells heirs, as interveners, made like charges against Martin, but the proof showed that they had no title to the land and they do not appeal. The case was presented to the jury upon special issues, and upon the findings of the jury the verdict was returned and judgment entered in favor of the appellee, the Wise County Coal Company, for all the land and establishing the validity of the Simmons survey.

"The Bridgeport Coal Company and the Floyd interveners filed a supersedeas bond and bring the case here upon appeal."

The complaint of the court's charge is of an omission merely, which, under well settled rule, called for appropriate requested instruction. Special charge number 1, presented by interveners, was properly refused as calling for a general verdict and inappropriate as the case was submitted. (Moore v. Pierson, 15 Texas Ct. Rep., 219; same case, 16 Texas Ct. Rep., 191.) Besides, the statement of the fractional shares claimed by interveners was clearly made in the special issues submitted to the jury at their request, thus rendering harmless the omission in the court's charge and obviating the objection urged to the refusal of special charge number 1. And, it can not be said there was error in refusing charge number 2, when considered with the jury's findings to the effect that interveners voluntarily executed the deeds under which appellee claims, after being informed as to the amount of land and of its value and condition as to title, and without any misleading or deceptive statement to induce interveners to so make deeds. If there were no misleading or deceptive statements made, as the jury in effect found, no necessity existed for an instruction to enable the jury to determine whether the statements "were deceitful and fraudulent."

There is no merit in the contention that the special issues, submitted at appellee's request, required joint findings as to interveners' interests. If the special issues mentioned were subject to such objection, which we very much doubt, separate findings, as to each intervener, were required and returned under special issues submitted at interveners' instance. There is no contradiction, if any, in the jury's findings which requires us to set them aside. That the jury found that the 11-48 interest of Robert Floyd and others in the land in controversy was worth but $10 at the time of its conveyance to appellee, and also found that a like interest of Mrs. Hardesty and others was worth $25 at the time she conveyed, hardly seems even conflicting, when it appears that Robert Floyd and others conveyed May 25, 1904, and Mrs. Hardesty and others on April 27, 1905. But if so, the conflict seems wholly immaterial in view of the jury's findings.

The special findings are such as to establish the vacancy between the Floyd and other surveys upon which the Simmons survey was located and patented, and the appellant Bridgeport Coal Company insists in several assignments of error that the "great preponderance of the evidence" is against these findings, and that they should hence be set aside. In the statements following these assignments no such interest in this appellant, apart from the interveners, is shown as renders the issue material. But if it be material—if this appellant has title to any part of the Floyd survey superior to that of the Floyd heirs which they conveyed to appellee—we fail to find any such a preponderance of evidence against the findings as would authorize us to disturb them. In locating the west line of the Floyd survey the jury observed its calls for course and distance, and these are not necessarily controlled by the mere incidental or passing call for the northeast corner of the Bromlow, yet farther west. (Jones v. Andrews, 72 Texas, 5.) The south line of the Floyd, as fixed by the jury, seems to agree with the testimony of County Surveyor A. Devereux to the effect that at the distance called for, there is a well marked line clearly distinct from the north line of the Kisman,

a greater distance to the south. We think the findings must be sustained. Judgment affirmed.

*Affirmed.*