CALVIN et ux. v. NEEL. (No. 8457.)

(Court of Civil Appeals of Texas. Ft. Worth. Nov. 18, 1916. Rehearing Denied Jan. 6, 1917.)

1. TRIAL ⬤⟿352(8)—VERDICT—SIGNATURE OF FOREMAN.

Where special interrogatories were submitted to the jury, which, on its return, was questioned by the judge as to whether the answers written were severally the answers of each juror to the respective questions, to which they replied in the affirmative, the mere fact that after the discharge of the jury it was discovered that the foreman had signed his name on the back of the charge below the file mark of the clerk, instead of immediately below the questions and answers, did not present reversible error.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 845; Dec. Dig. ⬤⟿352(8).]

2. APPEAL AND ERROR ⬤⟿854(1)—SCOPE OF REVIEW—REASON FOR DECISION.

The fact that several reasons are given by the court for the verdict rendered, and that some of them are not supported by the record, will not render the judgment bad if it can be sustained by other reasons given.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3410; Dec. Dig. ⬤⟿854(1).]

---

**3. JUDGMENT ☞256(1)—CONFORMITY TO VERDICT.**

It is the court's duty in rendering judgment to follow the jury's verdict and conform to it.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 446, 454; Dec. Dig. ☞256(1).]

**4. TRIAL ☞232(2)—INSTRUCTIONS.**

In an action on a note secured by deed of trust, wherein defendants pleaded homestead exemptions, and the cause was submitted on special interrogatories, a requested instruction that if defendants had possession of the property such possession would be notice to the plaintiff of the homestead rights, and if defendants were only temporarily absent, if they left their household goods in whole or in part on the premises, they still had possession, was properly refused, since it did not contain a request for submission of a special issue nor reference to or instructions to guide the jury in answering any issue submitted.

[Ed. Note.—For other cases, see Trial, Dec. Dig. ☞232(2).]

**5. APPEAL AND ERROR ☞218(2)—PRESERVATION OF EXCEPTIONS — SUBMISSION OF ISSUES.**

In a case submitted on special issues, if the form of a question submitted is insufficient to require the finding of necessary facts, counsel should request in writing a finding of such additional facts, and, in the absence of such request, the imperfect submission of an issue will not be ground for reversal of the judgment.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1320, 1321, 1323; Dec. Dig. ☞218(2); Trial, Cent. Dig. § 875.]

**6. APPEAL AND ERROR ☞218(2) — RIGHT OF HOMESTEAD—FINDINGS—REQUEST.**

In an action on a note secured by deed of trust, which recited that the makers' homestead was outside a certain city, and their answer pleaded homestead rights within such city, the jury's findings that at the time of execution of the note and trust deed the premises did not constitute their home, and that they did not reside thereon, but had moved to another place with the intention of making it their homestead, were sufficient, in the absence of request for other findings, to sustain judgment denying the homestead right.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1320, 1321, 1323; Dec. Dig. ☞218(2); Trial, Cent. Dig. § 875.]

**7. TRIAL ☞232(2) — RIGHT OF HOMESTEAD — INSTRUCTIONS.**

Where defendants' right to homestead was submitted on special issues, refusal of requested instruction that if the family goes away from the homestead without intention not to return to live thereon as a home, there is no abandonment, was properly refused.

[Ed. Note.—For other cases, see Trial, Dec. Dig. ☞232(2).]

**8. HOMESTEAD ☞13—RIGHT OF HOMESTEAD —TWO OR MORE PLACES.**

A party cannot claim a homestead right in two separate and distinct premises.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. § 14; Dec. Dig. ☞13.]

**9. HOMESTEAD ☞164—ABANDONMENT.**

While temporary absence from home or the renting thereof without intention to abandon will not deprive the owner of homestead rights, moving away with intention of making a new place a homestead and the adoption as such, destroys homestead rights in the first premises.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 327, 328; Dec. Dig. ☞164.]

**10. HOMESTEAD ☞181(2) — ABANDONMENT — EVIDENCE—ADMISSIBILITY.**

In an action on a note secured by trust deed to the premises to which defendant claimed a homestead right, where the evidence showed that he had previously left such premises, and he claimed he intended to return, a certified copy from the general land office of the application of defendant to purchase land, wherein it was recited by his affidavit that he desired to purchase land to make a home, was admissible.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. § 351; Dec. Dig. ☞181(2).]

**11. HOMESTEAD ☞181(3) — ABANDONMENT — EVIDENCE—SUFFICIENCY.**

Evidence *held* sufficient to show abandonment of homestead by defendant in action on note secured by trust deed to the premises in question.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. § 353; Dec. Dig. ☞181(3).]

**12. HOMESTEAD ☞177(2) — RIGHT TO HOMESTEAD—ESTOPPEL.**

A husband and wife may be estopped from asserting homestead rights by representations made to induce the conveyance of, or the incumbrance upon, the property sought to be impressed with the homestead character, where such premises are not occupied at the time as a homestead.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 345, 346; Dec. Dig. ☞177(2).]

**13. PRINCIPAL AND AGENT ☞23(1) — EVIDENCE OF RELATIONSHIP—SUFFICIENCY.**

Evidence *held* to show relationship of principal and agent so as to bind the principal for money borrowed by the agent for the principal's use.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. § 41; Dec. Dig. ☞23(1).]

**14. ACKNOWLEDGMENT ☞62(2) — EXECUTION —FRAUD—EVIDENCE.**

Where the notary who took acknowledgments to a trust deed testified that he read over and explained to the signers the instrument in question and the acknowledgment thereto, the court is not justified in holding that a signer did not understand it or that any undue influence or fraud induced the signatures.

[Ed. Note.—For other cases, see Acknowledgment, Cent. Dig. § 346; Dec. Dig. ☞62(2).]

Appeal from District Court, Tarrant County; R. B. Young, Judge.

Action by Mrs. L. K. Neel against James C. Calvin and wife. Judgment for plaintiff, and defendant Mrs. Lucy Calvin appeals. Affirmed.

W. R. Sawyers, Harris & Burton, and Theodore Mack, all of Ft. Worth, for appellant. Stanley Boykin, of Ft. Worth, for appellee.

BUCK, J. Appellee sued on a note for $1,200, dated December 13, 1911, payable to the order of plaintiff, and executed by J. C. Calvin and wife, Mrs. Lucy Calvin; said note being secured by a deed of trust on lot D, block 1, Lewis subdivision of block 1, Jennings south addition to the city of Ft. Worth. Defendants pleaded the homestead exemption, and the cause was submitted to a jury, the questions and answers thereto being hereinafter set out, to wit:

"First Question: At the time the note and deed of trust herein sued upon were executed by the defendants, was the property described in said deed of trust, the homestead of defendants? "Answer: No.

"Second Question: At the time the note and deed of trust sued upon herein were executed, were the defendants residing on the premises described in said deed of trust? "Answer: No.

"Third Question: If in answer to question 2 you should state that the defendants had moved away from the property described in said deed of trust and were living elsewhere, then you will state whether or not the defendants at the time of executing the deed of trust herein sued upon were living at another place, and you will state whether or not the defendants moved to some place other than said premises with the intention of making said other place their homestead. "Answer: Yes.

"Fourth Question: Was Noel Calvin acting for the defendants in securing said loan, and was he authorized by the defendants to do what he did in relation thereto? "Answer: Yes.

"Fifth Question: At the time of the execution of the note and deed of trust herein sued upon and at the time same was received and accepted by R. G. Johnson, did the said R. G. Johnson believe:

"(a) That the premises therein described were not the homestead of the defendants? and if he did believe such to be a fact, "Answer: Yes.

"(b) Was he induced to so believe by the acts and representations of the defendants or their duly authorized agent? "Answer: Yes.

"Sixth Question: At and prior to the time that R. G. Johnson accepted and received the note and deed of trust sued on herein, had he used such diligence as a careful and prudent person would have used under the same or similar circumstances to ascertain whether or not the premises described in said deed of trust were at the time of the execution of said note and deed of trust and at the time same was received and accepted by the said R. G. Johnson, the homestead of the defendants (if you should find that said premises at said times was the homestead of the defendants and claimed by them as such)? "Answer: Yes."

Upon this verdict the court entered judgment for plaintiff, and defendant Mrs. Lucy Calvin has appealed.

The evidence shows that the premises involved had been used by the defendants for many years as a homestead, but that for about two or three years prior to the date of the deed of trust, and for some six years prior to the trial, Mrs. Calvin had been staying at the farm of her mother several miles east of Ft. Worth. She testified that she first went out there in 1909, to take care of the place while her mother was visiting in Mexico, and upon the latter's return she remained to take care of her mother, who was quite old and feeble. During a major portion of the time Mrs. Calvin was residing with her mother, the premises involved in this suit were occupied by tenants. There is some evidence that some of the furniture belonging to the Calvins remained on the premises, either in a room reserved or in the barn. Mrs. Calvin testified that she had always regarded and claimed the house and premises in Ft. Worth as her home, and there is some evidence that at various times during these years she had expressed to others her intention to return to this place. In December, 1911, Noel Calvin, the adult son of Mr. and Mrs. Calvin, desired to embark in business in the city of Ft. Worth, and applied to Robt. G. Johnson, an attorney and the agent of appellee, to secure a loan of $1,200 for said purpose, stating that his mother and father would give a deed of trust on the premises described hereinabove, and would sign the note for the amount desired. It seems that Judge Johnson went to the house occupied by defendants' tenant and talked to a lady, apparently in charge, and received the information that she was occupying said premises as the tenant of Mrs. Calvin, and that the latter lived on a farm in the country. He then prepared a deed of trust, and wrote therein the stipulation that "our homestead is outside the city of Ft. Worth." A notary, accompanied by Noel Calvin and his wife, went to the farm where Mr. and Mrs. J. C. Calvin were living, and secured the signatures and acknowledgments of both. The notary testified that Mr. Calvin was not present at the taking of Mrs. Calvin's acknowledgment, and that before he took the same he read over the instrument to her, and explained it to her; that Mrs. Calvin did not make any objection to signing the instrument, nor did Mr. Calvin; that while at the house he asked Mrs. Calvin to list the farm with him for sale, he being a real estate agent, and that she replied that it had been her home for a number of years and that they would not part with it at any price; that she further stated that she was doing this (i. e., executing the instrument) to help her son. The evidence shows that the farm was in fact the community property of Mrs. Calvin's mother and her deceased husband, and that Mrs. Calvin had a child's interest therein. There was further evidence that during the years 1911 and 1912, the minor children of Mr. and Mrs. Calvin attended the public schools in the district in which the farm was located.

[1] In her first assignment, appellant urges that the court erred in rendering judgment for plaintiff, because, as asserted, there was no legal verdict of the jury in said case, the same not having been signed by the foreman. It appears that when the jury returned the verdict into court, the trial judge, before the jury were discharged and while they were in the jury box, read aloud to them each question that had been propounded and the respective answers thereto, and asked them if such was their answer to each of said questions, and that each time the jury replied that it was their answer, and that then, after reading all of the questions and answers, the court asked them if the entire answers constituted their verdict, and the jury replied in the affirmative. That after the jury was

discharged, it was discovered that the foreman had signed his name on the back of the charge below the file mark of the clerk, instead of immediately following the questions and answers. We hold that no reversible error is here presented. In Burton v. Bondies, 2 Tex. 204, it is held that it is not essential to the validity of a verdict that it be signed by the foreman, or by any member of the jury. If it be shown that the verdict returned was in fact the answer or answers of the jury to the issues or questions submitted, the verdict will be sustained, even though not signed. Douglas v. Baker, 79 Tex. 507, 15 S. W. 801; Dunlap v. Raywood, R. C. & M. Co., 43 Tex. Civ. App. 269, 95 S. W. 44; Cookville Coal & Lumber Co. v. Evans, 135 S. W. 750. Therefore appellant's first assignment will be overruled, and also the ninth, which presents in part the same question.

The judgment recites as follows:

"The court is of the opinion that the plaintiff is entitled to a judgment in her favor for the following reasons: (1) That the undisputed evidence upon the trial shows as a matter of law the defendants should be, and are, estopped from setting up the defense of homestead as against a deed of trust lien claimed by the plaintiff; and (2) if the court be mistaken in its conclusion as above given, then the court concludes that the plaintiff is entitled to a judgment as prayed for by reason of the answers of the jury to the special issues submitted to them as follows: [Then setting out the charge of the court and the answers of the jury to the special issues submitted.]"

[2, 3] The fact that several reasons are given by the court for the verdict rendered, and that some of such reasons are not supported by the record, will not render such judgment bad, if it can be sustained by other reasons given. 4 C. J. § 2557, and cases there cited.

In any event, it was the duty of the court in rendering judgment to follow the verdict of the jury. The verdict forms the basis of the judgment, and hence the judgment must conform to the verdict. Ablowich v. Greenville National Bank, 95 Tex. 429, 67 S. W. 79, 881, and cases cited in 11 Encyc. Dig. Texas Reports, 61.

[4] In her second assignment, appellant urges error in the refusal of the trial court to give her tendered charge as follows:

"You are instructed that if the defendants in this case had possession of the property sought to be foreclosed on, that such possession would be notice to the plaintiff, or her agent, of the homestead rights of defendants at the time of the execution of the deed of trust in question, and if you find from the evidence in the case that defendants were only temporarily absent from the home and property in question, yet if they left their household goods in whole or in part, on said premises, then that would constitute possession."

The case having been submitted to the jury on special issues, and the tendered charge not containing a request for the submission of a special issue, nor containing any reference to, or instructions to guide the jury in answering, any particular issue submitted,

we think the court properly refused to give the special charge requested.

[5] In a case submitted on special issues, if the form of a question submitted in a certain issue is insufficient to require the finding of the necessary facts, counsel should request in writing a finding of such additional facts. In the absence of such request, the imperfect submission of an issue will not be ground for a reversal of the judgment. York v. Hilger, 84 S. W. 1118. While in case of a special verdict, it is proper for the court to give such definitions and such special instructions as may enable the jury to answer the question submitted intelligently and with due reference to the legal principles involved, yet when such instructions are submitted, the jury should be directed therein to the issues of fact to which such instructions are applicable. Otherwise such instructions will confuse rather than enlighten the jury, and be violative of the rule that a general charge should not be given in a case submitted on special issues. Article 1984a, Vernon's Sayles' Texas Civil Statutes; Bridgeport Coal Company v. Wise County Coal Co., 44 Tex. Civ. App. 369, 99 S. W. 409; Hengy v. Hengy, 151 S. W. 1127; Pacific Express Co. v. Rudman, 145 S. W. 268; Pullman Palace Car Co. v. Hocker, 41 Tex. Civ. App. 607, 93 S. W. 1009; Southern Cotton Oil Co. v. Wallace, 23 Tex. Civ. App. 12, 54 S. W. 638, 641.

[6] The jury, in response to issues 1 to 3, inclusive, found that at the time of the execution by defendants of the note and deed of trust in question, the premises described in plaintiff's petition did not constitute the home of the defendants, that defendants at that time did not reside on said premises, that they were living elsewhere, and that they had moved to some other place than said premises with the intention of making said other place their homestead. These answers, especially in the absence of a request by defendants for other findings on the issues involved, we hold are sufficient to sustain the judgment denying defendants' claimed homestead rights. Boehm v. Beutler, 16 Tex. Civ. App. 380, 41 S. W. 658. Especially is this true, in view of the recital in the deed of trust executed by the defendants that the homestead claimed by them was not in the city of Ft. Worth, and, perforce, could not be the premises described. Moerlein v. Mortgage & Investment Co., 9 Tex. Civ. App. 415, 29 S. W. 162, 948; Mortgage Co. v. Norton, 71 Tex. 683, 10 S. W. 301. The issue of possession of the premises was not submitted, but only the question of the use of the premises as a homestead. Therefore the second assignment is overruled.

[7] We think what we have said above with reference to the second assignment applies, in the main, to the third specification urged, to wit, that the court should have given the following instruction:

"Gentlemen of the jury: You are instructed that the going away from a homestead by the

family, unless coupled with the intention by them not to return to live thereon as a home, is not abandonment of the homestead."

[8, 9] In answer to the third issue submitted, the jury found that the defendants moved to some place other than the premises described with the intention of making said other place their homestead. We do not understand it to be 'the law that a person may claim residential homestead exemptions or rights in two separate and distinct premises. While it is true that a temporary absence from the home, or the renting thereof, without the intention of abandoning it as a homestead, will not . deprive the owner of homestead rights, but the moving away from the former homestead to another with the intention of making the latter the new homestead, and the adoption of it as such, will destroy the homestead rights in the former premises. Hence, even though it should be argued that this charge, containing no reference to any issue submitted, complies with all the requirements as to charges in special issue cases, which we are not prepared to concede, yet in the instant case the jury in answer to special issue No. 3 answered adversely to appellant the substance and essence of the question presented in the tendered charge.

[10] The fourth assignment complains of the admission, over the objection of defendant, of certified copies from the General Land Office showing the application of defendant J. C. Calvin to purchase certain land in El Paso county in the year 1908. It is contended that the undisputed testimony of the defendants showed that such land was disposed of by said defendant J. C. Calvin in the year 1910, and was not claimed by him at the time of the date of the deed of trust in question. The certified copy introduced in evidence contained an affidavit by defendant J. C. Calvin, to the effect that he desired to purchase the lands described, in El Paso county, for the purpose of making a home, and was dated December 22, 1908, just before the time Mrs. Calvin went to her mother's and we are not prepared to say that it was not a circumstance admissible upon the issue of abandonment of the premises in Ft. Worth as a homestead. Sanders v. Sheran, 66 Tex. 655, 2 S. W. 804; White v. Epperson, 32 Tex. Civ. App. 162, 73 S. W. 851; Brown v. Lessing, 70 Tex. 544, 7 S. W. 783; Milburn Wagon Co. v. Kennedy, 75 Tex. 212, 13 S. W. 28. The case of Pellat v. Decker, 72 Tex. 578, 10 S. W. 696, cited by appellant in support of this assignment, was a case where Victor Pellat and his wife executed a mortgage to Decker on the homestead lots to secure a debt. Subsequently, Decker, becoming uneasy about his security, induced Pellat and wife to convey by deed to him the lots in question; the consideration recited being the exact amount claimed to be due from Pellat to Decker. In a subsequent suit between the parties, Decker offer-

ed in evidence what was termed a designation by the Pellats of their homestead, in which there was a statement of the different lots owned by them and a declaration that one lot other than either of the two upon which they resided was their homestead. It appearing that at the time of the execution of this instrument the Pellats were occupying as a homestead the two lots involved, and that Decker knew such to be the case, the court held that such declaration was not admissible against the Pellats, and that the instruction tendered excluding such evidence from a consideration of the jury should have been given. This was but an announcement of a familiar rule of evidence that actual occupancy is a conclusive designation of a homestead against which no declaration to the contrary can be considered. Texas Land & Loan Co. v. Blalock, 76 Tex. 89, 13 S. W. 13; Parish v. White, 5 Tex. Civ. App. 71, 24 S. W. 573.

[11] We overrule the fifth assignment attacking so much of the verdict of the jury as is contained in answers to the first three special issues, on the ground, as urged, that there is no evidence to support the finding as to the first and third issues, and that there is not sufficient evidence to sustain the finding as to the second issue. The evidence of S. J. Callaway, superintendent of schools at Polytechnic, in which district Mrs. Calvin resided when living on her mother's farm, that the Calvin children attended school two years and probably three during the years from 1907 to 1912, the testimony of the notary, Taylor Johnson, to the effect that he had a conversation with Mrs. Calvin with reference to the farm upon which she was living, and that she stated that said farm had been her home for a number of years, etc., the uncontradicted testimony as to the occupancy by tenants during the years 1909 up to, and subsequent to, the execution of the deed of trust, and the further recitation in the deed of trust that the homestead of defendants was not in the city of Ft. Worth, we think is sufficient to support the verdict as to these several issues mentioned.

[12] A husband and wife may be estopped from asserting homestead rights by representations made to induce the conveyance of, or the incumbrance upon, the property sought to be impressed with the homestead character, where such premises are not occupied at the time as a homestead. Mortgage Co. v. Norton, 71 Tex. 683, 10 S. W. 301; Brin v. Anderson, 25 Tex. Civ. App. 323, 60 S. W. 778; Moerlein v. M. & L. Co., 9 Tex. Civ. App. 415, 29 S. W. 948. Hence the fifth assignment is overruled.

[13, 14] We think the evidence is sufficient to support the finding of the jury that Noel Calvin was acting as agent for the defendants in securing the loan, as questioned in the sixth assignment. The fact that said Noel Calvin went with the notary out to see his mother and father, for the purpose of

securing their signatures and acknowledgments, the fact that Mrs. Calvin stated, as testified to by the notary, that she was securing this loan for her son, Noel, and perhaps other evidence, we think is sufficient to sustain the jury's finding upon this issue. But we are of the opinion that, irrespective of any statements claimed by appellee to have been made by Noel Calvin to her agent, Judge Johnson, the evidence is sufficient to show that Mrs. Calvin understood the nature and effect of the instrument which she executed, and knew that therein was contained the statement that a homestead other than the premises in Ft. Worth was designated and claimed by her. The notary testified that he read over and explained to Mrs. Calvin the deed of trust, and also the acknowledgment thereto, and we think that under the state of the evidence we are not justified in holding that she did not understand the instrument and its purport, or that any undue influence or fraud was brought to bear to induce her to sign said instrument. Graves v. Kinney, 95 Tex. 210, 66 S. W. 293; Causey v. Handley, 98 S. W. 432; Cooper v. Ford, 29 Tex. Civ. App. 253, 69 S. W. 490; Paris Grocer Co. v. Burks, 101 Tex. 112, 105 S. W. 175.

From what we have hereinabove said, it follows that appellant's seventh, eighth, and tenth assignments will be overruled; the questions therein raised having already been discussed and disposed of.

All assignments of error are overruled, and the judgment of the trial court is affirmed.