# THIRD DISTRICT, 1901.

## LEON BRIN v. W. C. ANDERSON AND WIFE.

### Decided February 6, 1901.

1.—Homestead—Setting Aside. Sale—Cross-Action—Foreclosure of Judgment Lien.

In a suit to set aside a sale of plaintiff's homestead under a trust deed, defendant, the creditor and purchaser under the sale, could maintain a cross-action to subject other lands of defendant to a judgment lien for the debt under which the sale had been made.

2.—Judgment Lien—Record of Abstract—Pleading.

An averment in a proceeding to foreclose a judgment lien that the judgment was "alphabetically and otherwise duly indexed and cross-indexed as required by law in such cases," was sufficient.

3.—Homestead—Designation by Husband—Orchard.

Planting an orchard upon a portion of the land occupied as a home impresses it with that character of homestead right which can not be removed by the husband's statutory designation of the homestead upon other parts of a tract exceeding in extent the homestead allowance.

4.—Designation of Homestead.

See facts under which a designation of the homestead by the husband in good faith out of a larger tract was held good, though it abandoned cultivated lands more convenient and better than some selected, involved a possible loss of a part of the two hundred acre exemption, through conflict of a part of the land designated with older surveys, and selected as a part of the exemption separate property of the wife in preference to community property.

Appeal from Brown. Tried below before Hon. J. O. Woodward.

*T. C. Wilkinson* and *G. N. Harrison,* for appellant.

*Goodwin & Grinnan,* for appellees.

KEY, ASSOCIATE JUSTICE.—This is an action of trespass to try title to 64 acres of land, W. C. Anderson and his wife being the plaintiffs and Leon Brin the defendant. The plaintiffs prevailed in the court below and the defendant has appealed.

Among other matters, the plaintiffs alleged in their petition that on March 26, 1896, the land in controversy was their homestead, it being part of 217 acres of land on the William Guyman survey owned by them. That on the day referred to, W. C. Anderson executed a trust deed in favor of the defendant on the 217 acres of land to secure a debt of about $1500; that on December 3, 1896, in a suit brought against W. C. Anderson, Leon Brin recovered judgment for said debt and a foreclosure of the deed of trust, under which judgment the 217 acres of land were sold and bought in by Brin. They also alleged that, the 64

acres of land in controversy being part of their homestead, the deed of trust and foreclosure sale were void and Brin acquired no title thereunder.

The defendant Brin, among other pleas, set up cross-action, alleging that there was a balance still owing and due on his judgment against W. C. Anderson; that he caused an abstract of said judgment to be made and recorded as the law directs, in Brown County, where the land in controversy and other lands described in the plea are situated; and he prayed, in the event of the plaintiffs' recovery of the land sued for, that his judgment lien created by recording the abstract be foreclosed on the other lands described in the plea. This plea alleged that the abstract of judgment was "alphabetically and otherwise duly indexed and cross-indexed, as required by law in such cases."

The ruling of the court in sustaining exceptions to and striking out the defendant's cross-action is assigned as error, and we think the assignment is well taken. The plaintiffs by their petition in this case attacked the judgment in the former suit in so far as it undertook to foreclose the lien on the land in controversy, and we think the matters pleaded in the cross-action were so connected with and incidental to the judgment referred to and the averments in the plaintiffs' petition, as to bring them within the rule permitting the filing of counterclaims and pleas in reconvention. Clegg v. Varnell, 18 Texas, 294; Carothers v. Thorp, 21 Texas, 361; Jones v. Ford, 60 Texas, 129; Scalf v. Tompkins, 61 Texas, 479. We are also of the opinion that the averments in reference to indexing the abstract were sufficient.

In reference to the homestead question it was shown by the undisputed evidence that at the time he designated his homestead, and before he executed the deed of trust to appellant, W. C. Anderson and his wife owned several connected tracts of land, amounting in the aggregate to 500 acres or more. The sketch on page 325 indicates the location and condition of the several tracts at the time referred to.

March 26, 1896, on the same day of, but prior to, the execution of the trust deed under which appellant claims, W. C. Anderson, in the manner prescribed by statute, executed and had recorded a written designation of his homestead, composed of the W. C. Anderson preempton, the 28 1-2-acre tract and the 18 8-10-acre tract. The designation describes the W. C. Anderson pre-emption as containing 159 9-10 acres; and, so considering it, the designation includes over 200 acres. W. C. Anderson was then a married man and resided with his family on his pre-emption survey, his residence, outhouses, well, and an old orchard being on that survey. There was also a field in cultivation on that survey near his residence, consisting of at least 12 acres. There was a tenant house in the north triangle of that survey, near which there was about 15 acres of land, part of that survey, in cultivation. The upper part of the north triangle of that survey was fenced off as a pasture, but was in appellees' possession and use at the time.

Most of the 70-acre tract on the M. R. Williams survey was in culti-

vation; and on the 56 1-2-acre tract there was at least 12 acres in cultivation. The 18 8-10-acre tract had a tenant house upon it, and at least 7 acres in cultivation. It was inclosed by a fence, but not included in the inclosure with the other lands. There was at least 12 acres on the 28 1-2-acre tract in cultivation. Appellees had one large inclosure

including all of the W. C. Anderson pre-emption, except the small triangle in the south end and on the southeast side of the public road, which seems to have been fenced off as a pasture, though this is not absolutely certain from the testimony.

The large inclosure referred to is indicated by the dotted line, beginning at the extreme north corner of the W. C. Anderson pre-emption and extending around to where the public road enters the south line of the 28 1-2-acre tract; from there the fence runs with the public road

between appellees' residence and the land in controversy, and practically with the east line of the W. C. Anderson pre-emption to the place of beginning.

The Guyman 217-acre tract joins the W. C. Anderson pre-emption on the east. The land in controversy in this suit is part of the Guyman tract, and was at the time in question inclosed as a farm, as indicated by the dotted lines, and all of it, except a few acres, was then in cultivation. On the west end of the 64 acres, and within about 300 feet of his residence, W. C. Anderson had planted another orchard, which the evidence indicates had not reached maturity at the time the homestead designation and trust deed in question were made.

The testimony shows that all the cultivated lands on the several tracts had been in cultivation by W. C. Anderson fifteen or twenty years, a portion of that in controversy having been put in cultivation first. All of the cultivated lands on the several tracts referred to were used and enjoyed by W. C. Anderson in the same general way,—that is, for farm purposes,—ever since they were put in cultivation.

The land in controversy is more conveniently situated with reference to the residence than most of the other lands designated as homestead; and W. C. Anderson testified that he had always claimed the 64 acres as part of his homestead. It was also shown to be a better class of land than that in cultivation on the other tracts.

It was further shown that the W. C. Anderson pre-emption conflicted with the William Patton, which was an older survey, and that before the homestead designation was made, the owner of the Patton had brought suit and recovered from W. C. Anderson 24 acres of the preemption survey. This apparently cut the homestead designation down to less than 200 acres; but there is some testimony tending to show that the W. C. Anderson pre-emption contained an excess nearly equal to the shortage referred to.

As before stated, on the same day that the homestead designation was made, and substantially as part of the same transaction, W. C. Anderson executed a deed of trust to appellant, conveying the Guyman 217-acre tract, which includes the land in controversy; and thereafter the deed of trust was foreclosed, and appellant purchased the entire Guyman tract thereunder. This trust deed contained a disclaimer of homestead right in the Guyman survey on the part of W. C. Anderson.

It is also proper to state that at the time in question the 70-acre tract on the north end of the M. R. Williams survey, and the east half of the M. G. Anderson pre-emption survey, were under mortgage to the First National Bank of Brownwood, which mortgage was afterwards foreclosed, and the bank became the purchaser of these lands. That mortgage, like the one to appellant, was executed by W. C. Anderson alone; and after the bank purchased at the foreclosure sale it brought suit against W. C. Anderson for the lands referred to. The suit was compromised and an agreed judgment rendered for the bank for the east half of the M. G. Anderson survey and the south half of the 70-acre

tract.  This judgment was rendered more than a year after the homestead designation and the mortgage under which appellant claims were made.

No evidence was submitted tending to show that W. C. Anderson, in designating his homestead, acted otherwise than in good faith or had any purpose to defraud his wife.  It is true that he did not consult her in reference to the designation, and she was ignorant of the fact that it had been made until after this suit was brought.  And it may be true that he did not make the wisest selection that could have been made, but there is nothing to indicate that he was influenced by any benefit secured or promised to him individually and not participated in by his wife, or that he was actuated by any feeling of malice, ill will or spite toward her.  If the selection made was disadvantageous to the wife, it was probably more so to the husband, as it is not likely that she would go to and from the several tracks of land in cultivation as often as he would.

The fact that some of the land designated as homestead was separate property of the wife is of no importance.  If it was impressed with the homestead character, the husband had the right to designate it as part of the homestead; and his doing so and thereby excluding the land in controversy from his homestead would not be a fraud upon her.

With the undisputed evidence clearly showing the above facts, we hold with reference to the questions of homestead:  (1)  That the orchard previously planted on the land in controversy was impressed with the character of homestead right which can not be removed by statutory homestead designation, nor by anything else except abandonment, resulting from permanent change of residence.  An orchard intended for family use and located within reasonable distance of the family residence should stand upon the same footing as a garden or cowpen similarly situated and intended for family use.  That a garden used for family purposes can not be abandoned as a homestead while so used, was decided in Medlenka v. Downing, 59 Texas, 33.  And it makes no difference that there may be another garden or orchard as conveniently situated and not on the land in controversy, it not appearing that the two are in excess of family needs and comforts.  Just how much land the orchard embraces is not disclosed by the testimony; and it is therefore impossible for this court to render the proper judgment in reference thereto.  (2)  With the exception of this orchard, we hold that the homestead designation, having been made in good faith by the husband, and embracing lands used by the family for homestead purposes, he had the power under article 2403 of the Revised Statutes to make the designation, and it is binding upon both the husband and the wife.  Affleck v. Wangermann, 93 Texas, 351.

It may be true, after adding the land covered by the orchard, that a shortage will still exist in the homestead designation on account of the loss of the 24 acres, resulting from the conflict between the W. C. Anderson pre-emption and the Patton survey, yet it appears that appellees

have title by limitation, if not otherwise, to the 56 1-2-acre tract on the M. R. Williams survey, which at the time in question was unincumbered, partly in cultivation and impressed with the homestead character. This being true, and it not appearing that appellant was in anywise responsible for the mistake made in designating as part of the homestead the 24 acres on the W. C. Anderson tract in conflict with the older survey, we think the execution of the mortgage on the land in controversy, except the orchard referred to, should be held valid and appellees required to make up the homestead shortage, if any, from the 56 1-2-acre tract.

The charge of the court on the subject of homestead was not in harmony with the views here expressed. Upon another trial, if the evidence be the same, the court, without submitting the question to the jury, should hold the homestead designation binding upon appellees, except as to the orchard; and if the evidence defines the boundaries of the latter with sufficient certainty, judgment should be rendered for the plaintiffs therefor, but for no other portion of the land in controversy.

For the errors pointed out, the judgment will be reversed and the cause remanded.

*Reversed and remanded.*