SMITH et al. v. VAN SLYKE et al.

(Court of Civil Appeals of Texas. Texarkana. June 22, 1911.)

1. HOMESTEAD (§ 47*)—VALIDITY—EXCESSIVE CLAIM.

The purpose of the statute in allowing a homesteader to designate in good faith, out of a larger tract, a particular tract actually used as a homestead is to locate the homestead within the boundaries of the land so designated, and to exclude other lands from the homestead claim, and a designation of a particular tract as a homestead is not invalid as to the claimant or creditors because the tracts designated contained an excess over the 200 acres allowed by statute, since the excess would not be exempted from execution sale, and could be set aside, as provided by law, in case of levy.

[Ed. Note.—For other cases, see Homestead, Dec. Dig. § 47.*]

2. HOMESTEAD (§ 125*)—VALIDITY—EXCESS.

A mortgage executed after a declaration of a homestead on the land was void, except as to the amount in excess of the 200 acres allowed.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. § 223; Dec. Dig. § 125.*]

3. HOMESTEAD (§ 125*)—EXCESS—EVIDENCE.

In determining whether there was an excess of over 200 acres allowed as a homestead in the several tracts, in a proceeding to foreclose mortgage liens, the field notes showing an excess were prima facie proof of that fact.

[Ed. Note.—For other cases, see Homestead, Dec. Dig. § 125.*]

4. HOMESTEAD (§ 128*)—EXCESS—LOCATION.

Since the sale of one of several tracts of a homestead evidenced the relinquishment of homestead rights in that tract, any excess over the 200 acres allowed as a homestead should be located in that tract, in satisfying a mortgage, executed after declaration of homestead, out of the land; the purchaser being deemed to have purchased subject to the mortgagee's rights in any such excess.

[Ed. Note.—For other cases, see Homestead, Dec. Dig. § 128.*]

5. HOMESTEAD (§ 56*)—CHANGE OF BOUNDARIES.

Under Rev. St. 1895, art. 2425, authorizing a change of boundaries in the homestead, providing that it does not impair the rights of parties acquired prior to the change, a change of the boundaries of a homestead would not affect the rights of a mortgagee in land, included within the boundaries after the change, which had accrued theretofore, so that he could enforce his lien as to such land.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 81, 82; Dec. Dig. § 56.*]

Appeal from District Court, Wise County; J. W. Patterson, Judge.

Action by Edgar Van Slyke and others against B. F. Smith and others. From a judgment for plaintiff and certain defendants as stated, defendant B. F. Smith and others appeal. Reversed and remanded in part, with directions. Modified in part and otherwise affirmed.

See, also, 138 S. W. 810.

The suit was instituted by Edgar Van Slyke against W. R. Hunt and wife, Mary J. Hunt, B. F. Smith, G. A. Newman, Texas Securities Company, Colonial & United States Mortgage Company, the Dallas Trust & Savings Bank, and some 14 other persons and corporations, to recover against W. R. Hunt and wife the principal, interest, and attorney's fees due upon a promissory note for $7,000, dated February 15, 1906, executed by the said Hunts, and payable to said appellee; and to foreclose as against each and all of the defendants a deed of trust upon certain real estate, executed by Hunt and wife to secure the payment of the note. The parties, except Hunt and wife, were made defendants upon the allegation that they were asserting some sort ·of claim or lien in the mortgaged property. The real estate in suit and described in the petition can be here designated as: First tract, 329½ acres of land out of the Benjamin McGaha survey; second tract, 2½ acres of same survey; third tract, 146 acres of the O. Herndon survey; fourth tract, 65 acres of the O. Herndon survey; fifth tract, 8 acres out of the Benjamin McGaha survey. Plaintiff in his petition also alleged that $4,750 of the $7,000 note sued on was given in renewal and extension of certain vendor's lien notes executed by Hunt and wife for the purchase money of the first and second tracts above, and that such notes had been properly assigned to the plaintiff by the vendor; and prayed for a foreclosure of the vendor's lien upon the two tracts as against all of the defendants.

The National Bank of Commerce, of St. Louis, intervened in the suit and sought to recover of W. R. Hunt upon two promissory notes, dated December 5, 1906, and to foreclose the alleged vendor's lien on the first and second tracts above. The intervener alleged that Hunt and wife had theretofore conveyed to Y. B. Yarborough the two tracts of land, and that Yarborough, on December 5, 1906, had reconveyed same to them, they executing the notes sued on for the purchase price, and that intervener in due course of trade became the purchaser of the notes.

The pleading of B. F. Smith resists a foreclosure of the plaintiff's lien against the third tract above of 146 acres. It is alleged that at the time and prior to the plaintiff's deed of trust the 146 acres was a part of the homestead of Hunt and wife, and was so designated by instrument in writing, which was acknowledged by Hunt on January 13, 1906, and recorded in the deed records of the county on February 13, 1906; that plaintiff's deed of trust was not executed until February 15, 1906; and that plaintiff had knowledge of the use and occupancy of this tract as a homestead by Hunt and wife, and so the lien was void; that thereafter Hunt applied for a loan from the Texas Securities

Company, and as an inducement for the loan did, on March 14, 1906, in writing, properly acknowledged by him, expressly abandon the homestead and homestead right in the 146 acres and designate therein other lands as the homestead; and, relying upon the faith of the said abandonment and designation, the Texas Securities Company made a loan of $1,750, evidenced by notes and secured by a deed of trust upon the 146 acres; that thereafter, on July 20, 1906, Smith, relying upon the facts and instrument in writing stated, purchased from Hunt and ·wife, by deed duly signed and acknowledged by them, the 146 acres, and as a part of the consideration assumed to pay off the indebtedness of the Texas Securities Company. It was further alleged that no part of plaintiff's demand was for the purchase money of this tract. It was prayed in the alternative that, in the event it should be adjudged that this tract was subject to plaintiff's lien, all of the other tracts be sold and applied before resorting to this tract. Smith afterwards sold to G. A. Newman; and Newman and the Texas Securities Company made, as material here, substantially the same defense as Smith. The pleadings of the parties as material to the appeal only are mentioned. All of the unnamed defendants were disposed of on either disclaimer or dismissal.

Mrs. Mary J. Hunt alleged that her husband left and abandoned her and their five minor children about November 1, 1908. Answering plaintiff's claim she alleged that continuously since the purchase she and her husband and children resided upon and used and made 200 acres, described by metes and bounds, out of the southeast part of the McGaha survey, their homestead. This 200 acres is made up of the fifth tract of eight acres, and the balance out of the first tract above. And by reason of the homestead claim it was urged that the plaintiff's deed of trust upon the 200 acres never became a lien upon this 200 acres. But it was alleged that a part of the indebtedness of plaintiff was a valid vendor's lien against the homestead; and she prayed that, as plaintiff's general lien was superior to all others, all the lands, other than the homestead, be sold and appropriated to the payment of the debt, and that the homestead be not appropriated to the satisfaction of any indebtedness, save and except the indebtedness found to be secured by a vendor's lien, and only so much of that as might not be satisfied out of the sale of the other lands covered by the deed of trust. Answering B. F. Smith, she alleged that the deed of herself and husband to him was intended as a mortgage, and that the 200 acres out of the southeast part of the McGaha survey was and has always in fact been and been used as their homestead, and that the 146 acres was never in fact a part of nor used as a homestead, and that the designation of the 146-acre tract as a homestead by her husband was made and intended as a fraud upon

her rights. She further pleaded non est factum as against the plaintiff and all the defendants as to certain instruments alleged to have been executed or acknowledged by her. Answering the National Bank of Commerce, she pleaded that the deed executed to Y. B. Yarborough was intended as a mortgage, and that the bank had notice thereof, and that the notes held by the bank, purporting to retain the vendor's lien, were not in fact purchase-money notes, but were only a debt secured by a mortgage lien upon the homestead, and therefore void as to that part of the land claimed as a homestead.

W. R. Hunt, who had been cited by publication, through counsel appointed by the court, answered by denial, and adopted the pleading of Mary J. Hunt. The court made findings of fact, which are in the record, and such findings as are challenged are stated later on.

A. J. Clendenen and McMurray & Gettys, for appellants. Garnett & Garnett, R. E. Carswell, and Robt. Carswell, for appellees.

LEVY, J. (after stating the facts as above). As to appellants B. F. Smith and the Texas Securities Company, whose rights are interdependent, their appeal involves only the 146 acres of the O. Herndon survey, herein designated as the third tract in suit. Neither the intervener, National Bank of Commerce, nor any of the defendants, except Mrs. Hunt and husband, are claiming any lien or interest in the 146 acres. And the controversy between appellant Mrs. Hunt and these two appellants as to this tract is as to whether the designation of the homestead by instrument in writing, made by W. R. Hunt on January 13, 1906, and recorded on February 13, 1906, which included this tract, was invalid and in fraud of her homestead rights, and as to whether the deed later executed by Mrs. Hunt and her husband to B. F. Smith to this tract was intended only as a mortgage. This tract is one of the five tracts covered by the deed of trust of appellee Van Slyke, and the deed of trust is prior in date to those appellants claim. And the controversy between these two appellants and appellee Van Slyke is as to whether, when Van Slyke's deed of trust was executed, the 146-acre tract was a part of the homestead of Hunt and his wife. These questions are presented by proper assignments of error made by each of these parties.

The court finds that on February 15, 1906, W. R. Hunt executed to appellee Van Slyke his note for $7,000, and on the same date Mr. and Mrs. Hunt executed a deed of trust on the five tracts, which included the 146 acres, to secure the payment of the note. $6,455.61 of the amount represents the original purchase money for the first and second tracts, but the other tracts had no purchase-money lien against them. On February 13, 1906, W. R. Hunt filed for record an in-

strument in writing, signed and properly acknowledged by him. designating and setting apart the homestead of himself and family. This instrument designated by field notes and set apart as the homestead the 146-acre tract, the 65-acre tract, and the 8-acre tract, and contained the recital, "and we do hereby forever disclaim any homestead interest in any other lands which we may own in this county or any other county in the state of Texas." At the time of this designation, and at the time of the Van Slyke lien, the residence in which the family lived, the barn, garden, lots, and outhouses were on the 8-acre tract; the cultivated land was on the 65 acres; and the entire balance of the five tracts, including the 146 acres, was not cultivated, but used alike for the pasture of stock. Hunt was engaged in stock raising. All of the tracts of land are contiguous to each other, except the 146-acre tract, which is disconnected with the other tracts. On March 14, 1906, W. R. Hunt, by instrument in writing, properly acknowledged, changed the boundaries of the first designation, and set apart and designated by field notes 200 acres out of the southeast part of the McGaha survey as his homestead. This second designation excluded the 146 acres. This instrument was properly filed for record on March 22, 1906. The field notes of these 200 acres include the second tract of 2½ acres, the fifth tract of 8 acres, on which are located the residence and garden and barn and outhouses, and a balance made up from the first tract of pasture land. The purpose of this latter change in designation was to secure the loan from the Texas Securities Company on the 146 acres. The lien to the Securities Company on the 146-acre tract was executed by Hunt and wife on March 14, 1906. On July 20, 1906, W. R. Hunt and wife, by deed duly signed and properly acknowledged, conveyed the 146 acres to B. F. Smith, and as part of the consideration Smith assumed the debt due the Securities Company, and subsequently Smith sold and conveyed the land to G. A. Newman, who, as between Smith and himself, assumed to pay off the Securities Company mortgage. The court concluded, as a matter of law, that the first designation of the homestead was made in full compliance with the forms of law, but was invalid upon two grounds: First, because it included upon its face an excess over 200 acres of land, and, second, because it did not embrace the lands used for the homestead.

The court, however, in this connection made the finding of fact upon which the conclusion of law was based that, "at the time of designation of homestead and at the time of the execution of plaintiff's lien, the defendant Hunt and wife lived in their residence located on said 8-acre tract. I find that at that time all the land that was in cultivation was on the 65-acre tract and that part of the McGaha survey designated

in the plat of homestead. I find that all the balance of the land, except what was in cultivation, was used by the defendant Hunt for the pasture of his stock in connection with his homestead; that the 146 acres and that part of the 65 acres not in cultivation was used by him in the same way as the 200 acres, marked 'homestead,' and not in cultivation, was used. I find that the 146 acres so designated as a part of the homestead on February 13, 1906, is wholly disconnected from any balance of the defendant Hunt's land." The court having made the finding that the designation recorded February 13, 1906, was made in compliance with law, and that this designation included the 8 acres on which the house and barn, garden and outhouses were located, and the 65-acre tract that was in cultivation, and the 146-acre tract that was used for the pasture of his stock in connection with his homestead in the same way as the land not in cultivation was used, and these being the facts, and there being no evidence of fraud, the conclusion of law that the designation was invalid, because not embracing the actual homestead was erroneous. Brin v. Anderson, 25 Tex. Civ. App. 323, 60 S. W. 780; McGaughey v. Bank, 41 Tex. Civ. App. 191, 92 S. W. 1003; Morris v. Pratt, 53 Tex. Civ. App. 181, 116 S. W. 646.

[1] The purpose and effect of the statute in allowing the written designation to be made in good faith out of a larger tract a particular tract or tracts, actually used and impressed with the homestead character, is to fix and locate the homestead within the boundaries of the lands so designated, and to exclude the other lands not so designated from the operation of the homestead claim. Such designation being in proper forms of law, as here, and the lands so described being at the time actually used for homestead purposes, as here, we do not think such designation was rendered invalid and void as to the homestead claimant or creditor in good faith, merely because the three tracts described therein contained in the aggregate apparently some excess of acreage above the 200 acres allowed by law. In Brin v. Anderson, supra, the designation included apparently more than 200 acres. If in the designation the field notes as run on the ground should disclose an excess above the 200 acres allowed by law as homestead, the excess by operation of law would simply not be exempted from execution sale. And if the homestead claimant refuse to set aside the excess, the excess could be set aside as is provided by law in cases of the levy by a sheriff upon a homestead containing more than 200 acres of land. There is preserved to the homestead claimant the full acreage allowed him by law, and within the boundaries formally and advisedly selected by him, and he in good conscience and fair dealing with creditors could ask no more.

[2] Having concluded that the designation

of the homestead on February 13, 1906, was valid, and appellee's mortgage lien being subsequently executed, it follows that his mortgage lien, as far as it covered the boundaries of the homestead designated, except the excess was void. The court finds that the purchase-money portion of the debt only included the first and second tracts of his mortgage, and this does not include the 146 acres, the 8 acres, and the 65 acres. The mortgage lien being void on the three tracts, except as to the excess above 200 acres, it was error to allow and foreclose the lien to the extent of 200 acres. An actual survey of the ground may show no excess.

[3, 4] But the field notes being in evidence, there exists thereby prima facie proof of some excess in the record. As appellee would have the legal right to subject the excess above 200 acres to his lien, the difficulty of ending the litigation here arises. Hunt having deeded the 146 acres to Smith, and that sale evidencing a relinquishment of homestead in that tract, the excess over homestead amount should, we think, be located on that tract. Smith should be held to have purchased the 146 acres, subject to appellee's lien on such excess over 200 acres of the homestead as may in fact exist as located on the 146-acre tract. As between appellee and Smith and the Texas Securities Company, the question of fact will have to be determined of whether there is an excess in fact over 200 acres in the first designation; and, if so, then the court will allow and decree a foreclosure on the amount of excess so found off the 146-acre tract. If there is no excess, then appellee will be denied a lien on any part of the 146 acres. As this is the only controversy that could arise between these parties just named as to the 146 acres, the judgment will be here as between them only reversed and remanded, with instructions to the trial court to make ascertainment of the fact of whether there is an excess in fact over 200 · acres in the first designation, and, if so, to enter and decree a foreclosure in favor of appellee to the extent only of the excess so found off the 146-acre tract; and, if there is in fact no excess, then to deny appellee a lien and foreclosure on the 146-acre tract. Smith and the Texas Securities Company will· recover costs of appeal of appellee.

[5] It appears that Hunt changed the boundaries of the first designation of the homestead, and in the change retained the 8 acres on which were located the residence and outhouses, but eliminated the 146 acres and the 65 acres. This change of boundaries was after appellee's lien accrued. The statute authorizes the change of boundaries, but expressly provides that it shall not impair the rights of parties acquired prior to such change. Art. 2425, R. S. This being the

law, then appellee was entitled to have awarded him the superior lien in the whole of the first and second tracts, and appellant Hunt's assignments in this respect cannot be sustained. Mrs. Hunt, however, is entitled to have the judgment modified, so as to entirely relieve the 8-acre tract from the lien of appellee, because it was homestead and no purchase-money lien existed against it, as is found by the court. Likewise appellee is entitled to have a reformation of the decree as against Hunt and wife, so as to give him a superior and unrestricted lien and sale as to the first and second tracts described.

Mrs. Hunt insists that the evidence is insufficient to support the finding of the court that the conveyance to Smith of the 146 acres was a sale and not a mortgage. The assignment is overruled. ·

Mrs. Hunt complains by the fifth and sixth assignments that the evidence does not sustain the finding of the court that the conveyance from herself and husband to Y. B. Yarborough was a sale and not a mortgage. The assignment is overruled.

Mrs. Hunt next complains of the failure of the court to make a finding as to whether the consideration recited in the conveyance to Yarborough was different from that paid. If the conveyance was made as a sale, as the court found, then under the evidence it could not be said that the evidence justified a finding that Mrs. Hunt was misled or deceived into signing it on account of the recital of the consideration as contained in the deed. Mrs. Hunt understood that the consideration was the payment by Yarborough of Van Slyke's debt and the debt due the bank. This was the consideration. It was denominated in the recital as $13,320. The assignment is overruled.

The judgment of the trial court will be reversed and remanded, with instructions herein given as between appellee and Smith and the Texas Securities Company, and modified as between Hunt and wife and appellee, so as to deny appellee a lien and sale of the 8-acre tract, and to award appellee a superior lien and unrestricted foreclosure as to the first and second tracts. In all other respects and as to all other parties, the judgment as entered will be affirmed.